IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Adrian T. Eaglin, ) <br> ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Larry Cartledge, *Warden*; Florence Mauney, ) <br> *Ass. Warden*; Curtis Earlly; Richard Turner; ) <br> Williams, *Captain*; Vernon Miller, *Captain*; ) <br> Susan Duffy, *Captain*; Springs, *Captain*; ) <br> Kevin Horn, *Lieutenant*; Wessinger, ) <br> *Lieutenant*; Thurber, *Sergeant*; Daniel Cotter, ) <br> *Sergeant*; Palmer, *Sergeant*; Blackburn, ) <br> *Sergeant*; McCall, *Sergeant*; Ragland, ) <br> *Sergeant*; Valero, *Sergeant*; Christopher T. ) <br> Dillard, *c/o*; Gardner, *#053548, c/o*; N. ) <br> Morgan, *c/o*; Boatwrite, *c/o*; R. Martin, ) <br> *#053630, c/o*; Luvett, *c/o*; Brown, *c/o*; Merck, ) <br> *c/o*; Hagan, *Investigator*; C. Hindenburg, II, ) <br> *G.C.*; Nancy Murchant, *Mail Clerk*; Tamara ) <br> Conwell, *Mail Clerk*; Benjamin Lewis, *Doctor*; ) <br> Ame Enloe, *Nurse Practitioner*; Mathew L. ) <br> Harper, *Nurse Administrator*; Katherine W. ) <br> Burgess, *Nurse*; Lindsey Harris, *Nurse*; Dawn ) <br> R. Chase, *Nurse*; Fish, *Sergeant*; Bryant ) <br> Sterling; Bryan Degeogis; Cashwell, ) <br> *Lieutenant*, ) <br> ) <br>       Defendants. ) <br> _____ ) | C/A No. 0:14-4003-TLW-PJG <br><br><br><br><br><br> **ORDER AND** <br> **REPORT AND RECOMMENDATION** |

  The plaintiff, Adrian T. Eaglin, a self-represented state prisoner, filed this action against the defendants pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motions for summary judgment. (ECF Nos. 100, 101.) Pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the court advised Eaglin of the summary judgment and

dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF No. 102.) Eaglin filed responses in opposition to the motions (ECF Nos. 127, 128), the defendants filed replies (ECF Nos. 129, 130), and Eaglin filed a sur-reply (ECF No. 138).[1] Also before the court is Eaglin's motion to compel the defendants' reply to Eaglin's response to their summary judgment motions (ECF No. 131), to which the defendants filed replies (ECF Nos. 134, 135). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motions (ECF Nos. 100, 101) should be granted as to Defendants Dillard, Gardner, and Boatwrite. The court further finds that the defendants' motion for summary judgment (ECF No. 101) should be granted in part, and denied in part, as to Defendant McCall. Eaglin's motion to compel is denied.[2]

## BACKGROUND

Eaglin alleges that, on August 19, 2013 at Perry Correctional Institution, Defendant Dillard spit in Eaglin's face. (ECF No. 16 at 1; ECF No. 16-1 at 8-9.) Defendant Gardner allegedly witnessed the incident. (ECF No. 16-1 at 9.) Eaglin alleges that Defendant Dillard's actions subjected Eaglin to a stomach virus identified as "H-Pylori," which he indicates was detected on

---

[1] The Local Rules make no provision for sur-replies. However, even considering Eaglin's sur-reply, it does not change the court's analysis of the legal issues and its recommendation.

[2] As indicated above, the defendants filed replies (ECF Nos. 129, 130) to Eaglin's responses in opposition (ECF Nos. 127, 128) to their motions for summary judgment (ECF Nos. 100, 101). Thus, to the extent Eaglin seeks an order compelling such action, the motion is terminated as moot. To the extent Eaglin seeks production of another copy of the defendants' replies, such a request is terminated as moot, because additional copies have been provided to Eaglin. (Defs.' Replies, ECF Nos. 134, 135.) Finally, Eaglin's motion asks this court to compel the defendants to refrain from retaliating against and harassing him "through their friends and co-workers." (ECF No. 131 at 1-2.) However, Eaglin fails to show that the defendants are engaging in, or responsible for, such conduct. Accordingly, to the extent Eaglin's motion seeks such relief, it is denied. (ECF No. 131.)



March 3, 2014. (ECF No. 16 at 2; ECF No. 16-1 at 9.) Additionally, Eaglin claims that he was sprayed with chemical munitions by Defendant McCall at Perry Correctional Institution on July 22, 2013 after a search of Eaglin's cell. (ECF No. 16 at 2; ECF No. 16-1 at 11-13.) Eaglin asserts that he was restrained at the time Defendant McCall discharged the chemical munitions and that Defendants Gardner and Boatwrite were present during the July 22, 2013 incident.[3] (Id.) Eaglin seeks injunctive relief and damages in this case. (ECF No. 16-1 at 19-20.)

## DISCUSSION

A.   **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

---

[3] Eaglin's Amended Complaint refers to Defendant Boatwrite. (Am. Compl., ECF No. 16.) However, in his response in opposition, Eaglin identifies this officer as Defendant Boatwright. (Pl.'s Resp. Opp'n, ECF No. 127.)



entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Eaglin's Excessive Force Claims[4]**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Eaglin must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (citing Wilson v. Seiter, 501 U.S.

---

[4] As an initial matter, the defendants correctly assert that Eaglin has abandoned his claims as to all defendants except Defendants McCall, Gardner, Boatwrite, and Dillard. (Defs.' Reply, ECF No. 129 at 1; Pl.'s Resp. Opp'n, ECF No. 127 at 3-5.)  Eaglin's responses in opposition to the defendants' motions for summary judgment indicate that the only claims remaining in this action are Eaglin's claims against Defendants McCall, Gardner, Boatwrite, and Dillard for an excessive use of force in violation of the Eighth Amendment. (Pl.'s Resp. Opp'n, ECF No. 127 at 3; Pl.'s Resp. Opp'n, ECF No. 128 at 3.)



294 (1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain

institutional security." Id. at 321-22.  The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed.  Id.  The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline."  Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting.  See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984).  In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution.  Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner.  Bailey, 736 F.2d at 969-70.  The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat.  Id.  Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used."  Id. at 969.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials."  Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

### 1.     Deployment of Chemical Munitions—Defendant McCall

Applying the <u>Whitley</u> factors to the facts viewed in the light most favorable to Eaglin, the court concludes that no reasonable jury could find that the amount of force used by Defendant McCall in discharging chemical munitions was unconstitutionally excessive. The defendants assert that, during the July 22, 2013 incident, Eaglin failed to comply with Defendant McCall's directive to "face forward and calm down." (Defs.' Mem. Supp. Mot. Summ. J., ECF No. 101-1 at 11; <u>see also</u> McCall Aff., ECF No. 101-27 at 2.) Eaglin denies "being disruptive" during the incident. (Pl.'s Resp. Opp'n, ECF No. 127 at 8.) However, Eaglin acknowledges that he did not immediately comply with Defendant McCall's directive that Eaglin remove his hand from his genitals for a visual search. (Am. Compl., ECF No. 16-1 at 12; Pl.'s Resp. Opp'n, ECF No. 127 at 2-3; <u>see also</u> Medical Summary Encounter Number 554, ECF No. 127-6 at 2.) Moreover, while Eaglin asserts that Defendant McCall's use of chemical munitions caused Eaglin to suffer an asthma attack, he concedes that Defendant McCall provided an "inhalent pump" after the incident.[5] (Am. Compl., ECF No. 16-1 at 12.) The court further observes that Eaglin was seen by medical personnel the next day where he "complained of the residue from the chemical munitions irritating his asthma, but [] showed no signs of respiratory distress or any other physical symptoms." (Medical Summary Encounter 554, ECF No. 127-6 at 2.) Medical records for a follow-up sick call on July 24, 2013 reflect that Eaglin voiced no concerns or complaints to a nurse who went to his cell to administer medication. (Medical Summary Encounter 555, ECF No. 127-6 at 2.) Eaglin did complain of a rash approximately two and a half weeks later, on August 9, 2013. (Medical Summary Encounter 587,

---

[5] A partial note for a medical visit, "signed off on 7/22/13" by Nurses Lindsey R. Harris and Amy R. Enloe, reflects that Eaglin was also provided an inhaler by medical personnel. (Medical Summary Encounter 551, ECF No. 127-7 at 2.)



ECF No. 127-7 at 4.) On that date, the nurse noted that Eaglin had no rash on his upper extremities, neck, back, or face, but did have a red, raised rash on his chest and left abdomen. (Id.)

Based on the record before the court, the undisputed evidence shows that Eaglin, at the very least, disobeyed a directive from Defendant McCall prior to this defendant's discharge of two bursts of chemical munitions. Thus, even viewing the facts regarding the deployment of chemical munitions in the light most favorable to Eaglin, the court concludes that no reasonable jury could find that Defendant McCall's perception of Eaglin's behavior as non-compliant was unreasonable. See Bailey, 736 F.2d at 969-70; see also Whitley, 475 U.S. at 321-22. Moreover, examining the extent of the injury actually inflicted, the court observes that Eaglin admits that he was provided an inhaler for his asthma directly after the incident and seen by medical personnel no more than one day later. It is further noted that courts have found the use of chemical munitions in amounts similar to, or greater than, the 43.9 grams administered in this case (see Incident Report, ECF No. 101-28 at 1), to be justified and not constitutionally excessive when faced with a recalcitrant prisoner. See Kemp v. Drago, C/A No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *7 (D.S.C. Sept. 11, 2013) (adopting Report and Recommendation finding the use of 72 grams of chemical munitions, while significant, justified where a prisoner failed to comply with an order); Robinson v. S.C. Dep't of Corr., C/A No. 5:10-2593-HMH-KDW, 2012 WL 851042, at *7 (D.S.C. Mar. 23, 2012) (adopting Report and Recommendation finding "two short bursts of chemical munitions" totaling 31 grams to be a small amount that was not unconstitutionally excessive); Plummer v. Goodwin, C/A No. 8:07-2741-TLW-BHH, 2010 WL 419927, at *7 n.4 (D.S.C. Jan. 29, 2010) (adopting Report and Recommendation finding the use of 33.5 grams of chemical munitions to be "not constitutionally relevant"). Accordingly, the court concludes that no reasonable jury could find that the use of chemical

munitions by Defendant McCall was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm.  See Wilkins, 559 U.S. at 37; see also Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.  Therefore, it is recommended that the defendants' motion for summary judgment (ECF No. 101) be granted as to Defendant McCall's deployment of chemical munitions on July 22, 2013.

        **2.**      **Force Applied to Retrieval/Restraint Chain—Defendants McCall, Gardner, and Boatwrite**[6]

Eaglin asserts that, prior to the discharge of chemical munitions, he was fully restrained. (Am. Compl., ECF No. 16-1 at 12.)  Eaglin explains in his response in opposition that such restraints included handcuffs, "including an additional handcuff attached to a retrieval chain and leg shackles." (Pl.'s Resp. Opp'n, ECF No. 127 at 2.)  Eaglin alleges that the discharge of chemical munitions caused him to fall to the floor and he was dragged to the door of his cell by the retrieval/restraint chain.[7]  (Am. Compl., ECF No. 16-1 at 12.)  Thereafter, Eaglin states that his restraints were removed.  (Id.)

---

[6] The defendants argue that Eaglin failed to exhaust his administrative remedies with regard to his claims against Defendants Gardner and Boatwrite. (Defs.' Mem. Supp. Mot. Summ. J., ECF No. 101-1 at 2; Defs.' Reply, ECF No. 129 at 2.)  The United States Court of Appeals for the Fourth Circuit has held that a prisoner does not have to specifically identify individuals in his grievances where such identification was not required by the prison's grievance procedures.  See Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 217 (2007)).  In this case, the defendants provide no indication that the South Carolina Department of Corrections' Inmate Grievance System requires an inmate to specifically identify individuals in a grievance. Further, it appears that no such requirement exists.  See Sturkey v. Stirling, C/A No. 2:13-cv-3451-RMG, 2014 WL 6460285, at *5 (D.S.C. Nov. 17, 2014), aff'd, 599 F. App'x 533 (4th Cir. 2015).

[7] The Amended Complaint does not clearly indicate which defendant or defendants allegedly dragged Eaglin to the cell door by his retrieval chain.  (Am. Compl., ECF No. 16-1 at 12.)  In his response in opposition, Eaglin asserts that Boatwrite "who was holding the retrieval chain pulled the chain assisted by the other two Defendants."  (Pl.'s Resp. Opp'n, ECF No. 127 at 3.)



In support of their argument that the defendants' actions did not constitute the use of excessive force (Defs.' Mem. Supp. Mot. Summ. J., ECF No. 101-1 at 10-12), they provide affidavit testimony from Defendants Gardner and McCall. Defendant Gardner avers that he did not use any force during the July 22, 2013 incident and that Defendant Boatwrite "had to pull the retrieval chain" when Eaglin became agitated. (Gardner Aff., ECF No. 101-7 at 2.) Defendant McCall also testifies that Defendant Boatwrite "used the minimal amount of pressure on the retrieval chain to control and calm [Eaglin] down." (McCall Aff., ECF No. 101-27 at 2.) As discussed above, Eaglin denies being angry or agitated during the incident, but admits that he failed to comply with a directive from Defendant McCall during the search of Eaglin's cell. (Am. Compl., ECF No. 16-1 at 12; Pl.'s Resp. Opp'n, ECF No. 127 at 2-3.) Eaglin does not allege any injury associated with his fall to the floor or the force applied to the restraint chain and his medical records do not reflect any complaints or injuries associated with such actions.

While the inquiry in an excessive force analysis is "not whether a certain quantum of injury was sustained," the "extent of injury suffered . . . may suggest whether the use of force could plausibly have been thought necessary in a particular situation," . . . . and "may also provide some indication of the amount of force applied." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (internal quotation marks and citations omitted). In this case, Eaglin fails to show that Defendants McCall, Gardner, and Boatwrite applied force to Eaglin's retrieval chain to "maliciously and sadistically" cause harm, rather than "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (internal quotation marks and citation omitted). Thus, applying the Whitley factors to the facts viewed in the light most favorable to Eaglin, the court concludes that no reasonable jury could find that the amount of force used by Defendants McCall, Gardner, and



Boatwrite to pull Eaglin's retrieval chain was unconstitutionally excessive. Accordingly, the court finds that the defendants' motion for summary judgment (ECF No. 101) should be granted with regard to the amount of force applied to Eaglin's restraint chain.

### 3.    Denial of Decontamination from Chemical Munitions—Defendant McCall

Eaglin also asserts an Eighth Amendment claim against Defendant McCall based on Eaglin's allegation that he was prevented from decontaminating with anything but toilet water and denied a shower following the deployment of chemical munitions. (Am. Compl., ECF No. 16-1 at 12.) Courts in this circuit have analyzed such claims as ones asserting excessive force. Williams v. Benjamin, 77 F.3d 756, 764-65 (4th Cir. 1996) (analyzing plaintiff's claim that he was restrained without the opportunity to wash after being maced as an excessive force claim).[8] The Fourth Circuit has expressly found that the unexplained denial of an opportunity for an inmate to wash off mace that is causing painful burning prior to the imposition of a lengthy confinement in restraints can support an inference of the wanton infliction of pain in violation of the Eighth Amendment. Williams, 77 F.3d at 764 n.4 (noting that the fact that prisoners are permitted to wash off mace shortly after its application has been a significant factor in upholding its use) (citing Soto v. Dickey, 744 F.2d 1260, 1266 (7th Cir. 1984)); see also Mann v. Failey, 578 F. App'x 267, 273 (4th Cir. 2014) ("We have previously held that the denial of decontamination can give rise to an Eighth Amendment claim.").

---

[8] Alternatively, the Fourth Circuit has also analyzed such a claim as one asserting medical indifference. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (analyzing plaintiff's claim against corrections officers who allegedly failed to permit decontamination and provide medical treatment after he was pepper sprayed as a deliberate indifference to medical needs claim). In the instant case, Eaglin appears to bring his alleged denial of decontamination solely as an excessive force claim.



The defendants deny Eaglin's allegation that he was forced to use toilet water to decontaminate and dispute Eaglin's assertion that the water to Eaglin's cell was turned off after the discharge of chemical munitions on July 22, 2013. (Defs.' Mem. Supp. Mot. Summ. J., ECF No. 101-1 at 11-12; see also McCall Aff., ECF No. 101-27 at 3.) The defendants point to Eaglin's medical record from the day after the incident as evidence that he provided contradictory information about the availability of water in his cell to decontaminate. (Defs.' Reply, ECF No. 129 at 5.) The notes from this medical visit on July 23, 2013 reflect that Eaglin requested a shower to wash off residue from the chemical munitions discharged on July 22, 2013 and indicated that he did not need hygiene products and could "just stand under the water and wash with [his] hands." (Medical Summary Encounter 554, ECF No. 127-6 at 2.) The notes indicate that the staff member then "confronted" Eaglin about a statement made five minutes earlier in the visit regarding his inability to use the sink in his cell to wash off the residue.[9] (Id.)

In support of his contention that he was denied running water in his cell after the discharge of chemical munitions on July 22, 2013, Eaglin provides his own affidavit (Eaglin Aff., ECF No. 127-2 at 3) and sworn statements by three other prisoners (Jacobs Aff., ECF No. 127-8 at 2; Spivey Aff., ECF No. 127-9 at 2; Gunnells Decl., ECF No. 127-10 at 3). Spivey and Eaglin also aver that he was denied a shower after the incident. (Eaglin Aff., ECF No. 127-2 at 3; Spivey Aff. ECF No. 127-9 at 2.) Eaglin further provides medical records reflecting his requests for a shower to

---

[9] The defendants also highlight Eaglin's failure to allege in his Step 1 grievance that Defendant McCall turned off the water to Eaglin's cell after discharging chemical munitions. (Defs.' Reply, ECF No. 129 at 5.) While Eaglin's grievances for the July 22, 2013 incident do not assert a lack of running water in his cell, these grievances do assert the denial of a shower between July 22, 2013 and August 5, 2013. (Request to Staff, ECF No. 127-11 at 2; Step 1 grievance, ECF No. 127-3 at 2; Step 2 grievance, ECF No. 127-4 at 3.) Thus, Eaglin's claim that he was not allowed an opportunity to decontaminate is deemed properly exhausted.



decontaminate on July 23, 2013 and August 9, 2013.  (Medical Summary Encounter 554, ECF No. 127-6 at 2; Medical Summary Encounter 587, ECF No. 127-7 at 4.)  The defendants do not dispute Eaglin's contention that he was denied a shower during that time frame.  Moreover, the court finds that Eaglin's statement that he could "just stand under the water and wash" (Medical Summary Encounter 554, ECF No. 127-6 at 2), made after a request to medical staff for a shower, does not contradict Eaglin's assertion that he had been denied running water in his cell after being sprayed with chemical munitions on July 22, 2013.

Based on the evidence presented, the court concludes that a genuine issue of material fact exists regarding Eaglin's access to running water for decontamination after Defendant McCall's discharge of chemical munitions on July 22, 2013.  See Mann, 578 F. App'x at 273.  Accordingly, the court recommends that the defendants' motion for summary judgment (ECF No. 101) be denied as to Eaglin's excessive force claim against Defendant McCall based on the denial of decontamination from chemical munitions.

    **4.**     **Spitting Incident—Defendant Dillard**

The defendant asserts that Eaglin's allegation against Defendant Dillard does not support an Eighth Amendment excessive force claim.  In his response in opposition, Eaglin continues to assert that he tested positive for "H-PYLORI, a bacteria that lives in the stomach[] but can be transmitted through the oral and fecal cavities."  (Pl.'s Resp. Opp'n, ECF No. 128 at 3.)  Eaglin provides an affidavit, where he further states that H-Pylori can be spread through contaminated food or water.  (Eaglin Aff., ECF No. 128-12 at 2.)  This affidavit indicates that Eaglin tested positive for H-Pylori on March 3, 3014 and includes labels from medications dispensed to him on that date for a fourteen-day course of treatment.  (Id.)  Eaglin further provides a request to staff form dated April 7, 2014

Page 13 of  16



where he states that he has "noticed a lot of H-Pylori patients are here at Perry amongst me." (Request to Staff, ECF No. 128-14 at 2.)

Courts have held that, "[a]s a matter of law, a single incident of spitting does not constitute excessive force." Tafari v. McCarthy, 714 F. Supp. 2d 317, 348 (N.D.N.Y. 2010) (collecting cases); see also Jelks v. Cain, C/A No. 14-0521-BAJ-RLB, 2015 WL 5608245, at *5 (M.D. La. Aug. 18, 2015) ("[W]hereas the Court does not condone the defendant's action in spitting in the plaintiff's face, if this in fact occurred, this initial conduct by the defendant did not amount to excessive force or otherwise violate the plaintiff's federal constitutional rights.") (collecting cases); McBride v. Ausbie, C/A No. 3:14-CV-317-M, 2014 WL 5032720, at *3 (N.D. Tex. Oct. 8, 2014) (adopting Report and Recommendation finding that "an officer's allegedly once spitting on a prisoner" does not allege the use of any force at all and is subject to summary dismissal); Shanklin v. Seals, C/A No. 3:07cv319, 2010 WL 2942649, at *24 (E.D. Va. July 27, 2010) (holding that a "single incident of spitting, while certainly deplorable and offensive, do[es] not rise to the level of a constitutional violation") (collecting cases).

Thus, even if Eaglin could prove that the spitting incident on August 19, 2013, rather than contact with other infected prisoners or a contaminated water source, resulted in his contraction of H-Pylori approximately six months later in March of 2014, his excessive force claim against Defendant Dillard fails as a matter of law. Accordingly, the court concludes that no reasonable jury could find Defendant Dillard liable to Eaglin for the use of excessive force on August 19, 2013 and this defendant's motion for summary judgment (ECF No. 100) should be granted.

*PJG*

**C.     State Law Claims**

In his responses in opposition to the defendants' motions for summary judgment, Eaglin does not address the defendants' arguments regarding the state law claims raised in the Amended Complaint. (Pl.'s Resp. Opp'n, ECF Nos. 127, 128.) Therefore, the court finds that Eaglin has abandoned such claims.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motions for summary judgment (ECF Nos. 100, 101) be granted as to Defendants Dillard, Gardner, and Boatwrite. The court further recommends that the defendants' motion for summary judgment (ECF No. 101) should be granted in part, and denied in part, as to Defendant McCall.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 22, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).